W. E. HARLOW et al., Appellees, v. O. S. LARSON et al., Appellants.

HOMESTEAD: Incumbrance—Joint Execution—Sufficiency. An incumbrance upon a homestead must be jointly executed by the husband and wife, but not necessarily at the same point of time.

RECEIVERS: Appointment—Mortgage Foreclosure. Record reviewed, and held that the appointment of a receiver in mortgage foreclosure was not erroneous when the property was but slightly in excess of the incumbrance.

Headnote 1: 29 C. J. pp. 885, 902, 908. Headnote 2: 42 C. J. pp. 120, 122.

Headnote 1: 13 R. C. L. 642.

*Appeal from Harrison District Court.*—W. C. RATCLIFF, Judge.

APRIL 5, 1927.

REHEARING DENIED OCTOBER 1, 1927.

Action in equity upon three negotiable promissory notes, and to foreclose a mortgage against the property of the defendants O. S. and Virgia Larson. Judgment and decree of foreclosure was entered in the district court, and the Larsons appeal.—*Affirmed.*

*L. W. Fallon* and *Robertson & Havens,* for appellants.

*P. E. Roadifer,* for W. E. Harlow and Continental & Commercial National Bank, appellees.

*Walter I. Wolfe,* for U. T. Case, Charles M. Nye, and National Roofing Company, appellees.

*L. W. Fallon,* for J. Ellis Jones and Quinn Lumber Company, appellees.

STEVENS, J.—On and prior to May 19, 1921, appellants were indebted to the State Savings Bank of Logan, Iowa, upon nine unsecured negotiable promissory notes for various

amounts, aggregating $31,900. Some, or all, of these notes were held by correspondent banks, as collateral or rediscounts. On the above date, appellants executed three additional negotiable promissory notes, two for $10,000 and one for $11,900, securing the payment thereof by a mortgage upon 163.54 acres of land situated near the town of Logan in Harrison County. Contemporaneously with the execution of the three notes and mortgage, the parties signed a written agreement, stipulating that. they were executed as collateral to the nine notes above referred to; that they represented the same indebtedness; and that the payment of one set of notes should operate as full payment and settlement of the other. Very shortly after the ex-ecution of the three notes and mortgage, the same were transferred to M. B. Cottrell, the father of D. E. Cottrell, who was then vice president of the State Savings Bank, and the full face value paid to the bank therefor. Later, eight of the nine notes were returned to appellants. The remaining note, which was for $2,500, was held by a bank in South Omaha, and was finally surrendered in pursuance of a purported settlement entered into between the receiver of the State Savings Bank, which became insolvent on or about May 25, 1923, the trustees of the notes in suit, and appellants.

Fraud and duress in the inception of the three notes, which are the notes in suit, and the mortgage, together with full payment thereof, are pleaded as defenses to this action. In addition to the foregoing, it is alleged by appellant that the mortgage, which covers their homestead, is void as to such homestead, for the reason that it was not signed and acknowledged by the mortgagors, who are husband and wife, at the same time. It is also alleged that the delivery of the notes and mortgage was conditional only. Appellees, who acquired the notes and mortgage after maturity, set up the alleged settlement between appellants, the receiver of the State Savings Bank, and the trustees, who held the notes for appellees, as a complete bar and estoppel against them and all defenses pleaded.

The appellant O. S. Larson, during the time involved in this controversy, resided with the family upon the mortgaged premises near Logan, and was engaged in the dairy and fine-stock business. During the years 1921, 1922, and 1923, numerous stock sales were held on the premises, all of which were

clerked by D. E. Cottrell, who received the cash or notes for the stock sold, and placed the same in the State Savings Bank in a special account, to the credit of O. S. Larson, until settlements were completed, when the same was transferred to his general account in the bank. Prior to the execution of the nine notes to which we have already referred, appellant erected a residence upon the mortgaged premises, costing about $30,000, a garage costing $2,000, and other improvements costing substantially $6,000. The stock sales of appellant, according to estimates made by him, were: For 1920, $27,000; for 1921, $14,000 or $15,000; and for 1922, $11,000. Carbon copies of the sales accounts kept by the clerk of the sale were introduced in evidence, but the aggregate amount thereof appears not to have been computed, and does not show thereon. None of the books of the bank nor the checks and vouchers returned to appellants were introduced in evidence, nor do we find any statement of the special or general accounts of appellants therewith.

I. First, as to fraud and duress in the inception of the notes and mortgage in suit: It is alleged in the answer of appellants that they were induced to sign the notes and mortgage by the oral representations and promise of D. E. Cottrell that the bank would loan, advance, and furnish them whatever money they needed in carrying on their business, paying interest on their loans, and for other purposes. The duress charged is that Cottrell threatened to prosecute O. S. Larson because he had obtained more money from the bank than it could lawfully loan him. It is unnecessary to set out the evidence in detail, covering these charges made by appellants. Many notes were executed by appellants to the bank after the execution of the instruments in suit. They continued to keep their account at the State Savings Bank until it closed, in May, 1923. Cottrell admitted that he threatened suit against O. S. Larson if he and his wife did not execute the mortgage as collateral to the existing indebtedness of $31,900. The written agreement executed and signed by O. S. Larson, as party of the first part, and D. E. Cottrell, vice president of the State Savings Bank, on the same day as the mortgage, contained the following provision:

"That whereas the party of the first part as said notes will come due will desire to extend the time of the payment of the same or make renewals thereof it is therefore mutually agreed

between the parties hereto that the following notes which are secured by a mortgage on real estate belonging to the party of the first part be and the same is given to the party of the second part as collateral security to the above described notes and for the payment of the same, said notes being as follows, * * *''

Some seventeen notes executed subsequent to the date of the mortgage were introduced in evidence, and have been certified to this court for inspection. It is claimed by appellees that these notes were executed in renewal of the 9 original unsecured notes. The evidence relied upon by appellants to establish their claim of fraud and duress is not persuasive, and is quite inconsistent with the subsequent relation of the parties, as shown by the foregoing recital of the facts.

II. The evidence of payment is likewise indefinite, uncertain, and extremely unsatisfactory. Just when 8 of the original notes were delivered by the bank to appellants is not definitely shown. The evidence is uncertain on this point. They are all, with one exception, stamped "Paid." The one not stamped has "Renewal" written upon it. The claim of appellees is that the notes were stamped "Paid" as fast as they were received from the holders, and that they were either placed in an envelope in a pigeonhole and returned at one time, or returned with the monthly or periodical statements of appellants' account. It is certain that all of the notes, except one for $2,500 held by the Omaha Bank, had been delivered to appellants prior to April 30, 1924, when the settlement alleged by appellees was effected.

It appears without dispute in the testimony that, on the above date, O. S. Larson, with one of his attorneys, met the representative of the receiver and the trustees at the bank, and the differences between all parties were gone over, and a settlement agreed upon. A package of notes, all of which were executed subsequent to May 19, 1921, marked "Canceled by compromise," was then delivered to appellant O. S. Larson, as a part of the alleged settlement. At the same time, Larson gave his check to the receiver or the trustees for $2,000, which represented the difference between the amount of the renewal notes and the three notes in suit. It is conceded by appellees that all of the notes surrendered at the time of the settlement were given in renewal of the original 9 notes, and that they represented

the same indebtedness as the notes in suit. Upon receipt of Larson's check for $2,000, the following receipt was signed by them and turned over to Larson, viz:

"Logan, Iowa, April 30th, 1924.

"Received of O. S. Larson the sum of $2,000.00, being the amount due under a settlement and compromise of the balance of certain indebtedness evidenced by promissory notes canceled and surrendered to him, and being in full settlement of said notes so canceled and of all his indebtedness to the State Savings Bank, Louis Visha, P. E. Roadifer and A. J. Stilwell, trustees, except the amount evidenced by three promissory notes aggregating $31,900.00, secured by real estate mortgage, which notes so secured are held as evidencing the balance due upon the indebtedness settled and compromised by said payment of $2,000.00, and the said O. S. Larson is released from all liability, except as to the $31,900.00, above referred to. [Signed] P. E. Roadifer; Louis Visha, Trustees."

It is the contention of appellants that D. E. Cottrell was instructed to apply the proceeds received from stock sales upon the indebtedness of O. S. Larson to the bank, and that, if a proper application was or had been made thereof, the indebtedness would have been paid in full. In addition to the proceeds of the sales of stock, appellant O. S. Larson testified that he secured a loan of $6,000 upon real estate, and turned this over to the bank, to be applied upon his indebtedness. It developed, however, in the testimony that the $6,000 farm loan was secured prior to the execution of the notes in suit, and that the largest sale of stock, which was in 1921, was prior to the date of the notes. What became of the proceeds of the sales of stock is left entirely to conjecture.

Appellants seek to avoid the effect of the settlement by claiming that the purpose of it was to secure the release of a chattel mortgage upon certain stock which appellants desired to sell, and that the $2,000 was paid for that purpose, and that, as a part of the transaction, it was agreed that the settlement was to be without prejudice to any defense appellants might have to the notes. This action had not then been commenced. The original sheet of paper showing the method by which the settlement was arrived at is before us. Interest was figured on

the $31,900 represented by the three notes, and also upon all other notes held by the bank, and proper credit given. When this was done, there was a balance due on the notes of $2,071.23. This amount was discounted, and the check for $2,000 accepted in full payment thereof. Larson was represented at this settlement by an attorney, who must have known and understood the settlement made. The desire to secure the release of the chattel mortgage on the stock may have been the immediate inducement to the discussion, but the settlement clearly went much further, and included all matters of difference between appellants, the bank, the receiver, and appellees. The settlement cannot be easily impeached. The receipt given was clear and explicit, and it is difficult to perceive how there could have been any misunderstanding on the part of appellants. No fraud is charged, and they were represented by a competent attorney.

The record before us is wholly insufficient to show payment of the notes. Larson is a man of experience, and we do not credit him with any great lack of understanding of the matters involved in the alleged settlement. While some claim is made that the burden was on appellees to prove nonpayment of the notes, we think the claim without merit. Appellants admit that monthly or periodical settlements of the account were rendered by the bank, and it is not claimed that proper checks or vouchers were not included therewith. No accounting was asked, although appellants did allege in their answer that an accounting should be had. The evidence does not, in our opinion, sustain appellants' plea of payment. No attempt has been made to do more than state a few of the principal facts and to state conclusions. A recital of the evidence in detail is unnecessary.

III. The purpose for which the notes and mortgage in suit were executed is quite fully recited in the stipulation to which we have already referred. It may be, as appellants contend, that Cottrell promised further loans and advances to them, but the evidence relied upon to show that this was the condition upon which the instruments were delivered is, in view of the other facts and circumstances shown in the evidence, insufficient to support a finding that the mortgage never became effective for want of delivery.

It is conceded that Virgia Larson signed the mortgage some days or weeks after her husband. She signed it reluctantly, and

only after repeated requests and considerable persuasion. The

1. HOMESTEAD:
incumbrance:
joint execution:
sufficiency.

'mere fact that the signatures were affixed there-' to on different dates is not material. Section 10147, Code of 1924, requires that an incumbrance upon the homestead be signed jointly by the husband and wife, but it does not require that they sign and acknowledge the same at the same time. *Epperly v. Ferguson*, 118 Iowa 47; *Kettering v. Eastlack*, 130 Iowa 498; *Luttschwager v. Fank*, 151 Iowa 55; *Brunsdon v. Brunsdon*, 199 Iowa 1099.

It is very doubtful if the mortgage was properly acknowledged by Mrs. Larson, but this is not necessary to its validity, as between the original parties. *First Nat. Bank v. Ten Napel*, 198 Iowa 816.

IV. A receiver was appointed by the court in the fore-.closure proceedings, to take charge of the mortgaged premises. The original order of appointment included the homestead.

2. RECEIVERS: ap-
pointment:
mortgage fore-
closure.

This order was modified by the court in the decree entered in this case, so as to exclude the homestead. It is, however, further contended by appellants that the order appointing a receiver at all should be canceled and set aside. The 123-acre tract, improved as we have already stated, is worth, according to the concession of appellees, at least $250 per acre. The remaining 40-acre tract is incumbered for more than its value. The aggregate incumbrance upon the 123 acres is approximately $44,000. Appellants claim that this tract is worth $600 per acre. If its value be conceded to be $400, the margin above the indebtedness could be little more than nominal. The amount invested in improvements would seem to be excessive, and liable to considerable discount in fixing the market value of the farm. The receiver was appointed by agreement between the attorney for appellees and the attorney then representing appellants. True, appellants testified that this was without their consent, but whether so or not is not controlling. We are not inclined to hold that the appointment of the receiver, except as to the homestead, was erroneous.

The finding and decree of the district court is, we think, notwithstanding the uncertainty in the evidence, in many re-

spects, satisfactorily sustained by the evidence. We agree with the conclusion reached.—*Affirmed.*

EVANS, C. J., and FAVILLE and VERMILION, JJ., concur.